369 A.2d 362

COMMONWEALTH of Pennsylvania

v.

Charles E. FLOWERS, Appellant.

Superior Court of Pennsylvania.

Submitted June 9, 1975.

Decided Nov. 22, 1976.

200

Penn B. Glazier, Lancaster, for appellant.

Henry S. Kenderdine, Jr., Assistant District Attorney, Lancaster, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence. A jury found appellant guilty of stealing some copper wire. Appellant claims various errors, but the only claim we need consider is that his confession was the result of an unlawful arrest.[1]

The arrest was on a warrant issued by a justice of the peace in response to a complaint signed and sworn to before the justice by a State trooper.

Paragraph 2 of the complaint stated:

The acts committed by the accused were: * Theft by

* (Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. In a court case neither the evidence nor the statute alleged violated need be cited, nor shall a citation of the statute allegedly violated, by itself, be sufficient . . . .)

Unlawful Taking or Disposition.

On the above date and time [December 26, 1973, 3–5 a. m.] the actor did intentionally and knowingly enter onto the property of W. S. Fry & Co., commonly known as Billmeyer Quarry, and from the wooden poles thereon did remove approximately 720 feet of copper wire, valued at $480.00

AND

Theft by unlawful Taking or Disposition. On the date of December 8, 1973, at or about 7–10 p. m., at

1. Appellant's other claims are that the evidence was insufficient, that the district attorney improperly elicited the fact that when first questioned, appellant had refused to make a statement, and that the trial judge improperly instructed the jury with respect to appellant's claim that he thought the wire had been abandoned.

Conoy Twp., Pa. # 441, Lancaster County, the actor did intentionally and knowingly enter onto the property of W. S. Fry & Co., and from the property thereof did remove approximately 400 feet of copper wire, valued at $340.00

all of which were against the peace and dignity of the Commonwealth and contrary to the Act of Assembly, or in violation of 3921 and Sub-section B of the Crimes Code.[2]

Paragraph 3 of the complaint asked that an arrest warrant be issued. Immediately beneath this paragraph the justice of the peace certified that "the complaint has been properly sworn to and executed before me, and I believe that within affiant to be a responsible person and that there is probable cause for the issuance of process." He then issued the requested warrant.

The trooper served the warrant on appellant at about 8:00 p. m., December 29th, and took appellant to the State Police barracks, where appellant was questioned and gave a statement admitting both thefts. At about

2. 18 Pa.C.S.A. § 3921, prohibiting theft by unlawful taking or disposition, provides:
 (a) Moveable property.—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof.
 (b) Immoveable property.—A person is guilty of theft if he unlawfully transfers, or exercises unlawful control over, immoveable property of another or any interest therein with intent to benefit himself or another not entitled thereto. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973.
 18 Pa.C.S.A. § 3901 defines "Moveable property" as follows:
 Property the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location. "Immoveable property" is all other property.
 Thus, because appellant was accused of theft and disposition of rolls of copper wire, he should have been charged under § 3921(a) rather than § 3921(b). This issue was not briefed, however, and is therefore not properly before us.
 Each of the thefts that appellant was charged with is a misdemeanor of the first degree. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 3903(a), (b).

10:00 p. m. appellant was taken before the justice of the peace for preliminary arraignment.

Counsel for appellant filed a motion to suppress appellant's statement, alleging, *inter alia*, that:

4. The arrest was illegal . . . . The warrant was not based upon an affidavit containing sufficient facts to enable the issuing magistrate independently to conclude that there was probable cause for the arrest.

5. As a result of and as the fruit of the foregoing arrest, the police officer obtained certain statements . . . .

The motion to suppress was heard on June 17, 1974, and was denied. The case was tried on June 18; at the trial, appellant's statement was admitted into evidence over his counsel's objection. Post-trial motions were filed, and by order and opinion of January 10, 1975, were denied.[3] On February 21, 1975, sentence was imposed.

## I

██ In approaching the issue of the legality of appellant's arrest, it is necessary first to note that the arrest had to be effected by warrant. This is so because the of-

---

**3.** The post-trial motions do not specifically assign as error the admission of appellant's statement into evidence. However, as has been noted, a motion to suppress was filed, and the issue of the admissibility of the statement was preserved by objection at trial. Evidently the lower court, as well as counsel, regarded the issue as included in the allegation in the motion for new trial that the verdict was "contrary to law," for in its opinion denying the motion for new trial the court considers the issue and rejects the argument of appellant's counsel. It is therefore clear that from the outset, and throughout the case, appellant's counsel has maintained, and the lower court has known he was maintaining, that the statement was the result of an arrest illegal because by warrant not issued upon probable cause. In these circumstances we shall not find waiver, the more so since if we did, we should only later have to declare counsel ineffective. *See generally Commonwealth v. Learn*, 233 Pa.Super. 288, 291–292, 335 A.2d 417, 419 (1975); *Commonwealth v. Wardell*, 232 Pa.Super. 468, 334 A.2d 746 (1975).

fenses charged were both misdemeanors [4] not committed in the presence of the arresting officer and not within any statute specifically authorizing arrest without warrant. *See United States v. Watson,* 423 U.S. 411, 434, 96 S.Ct. 820, 832, 46 L.Ed.2d 598, 615 (1976) (dissenting opinion by Marshall, J.); *Commonwealth v. Cairns,* 234 Pa.Super. 331, 338 A.2d 680 (1975) (Price, J., dissenting); *Commonwealth v. Kriner,* 234 Pa.Super. 230, 338 A.2d 683 (1975) (Watkins, P. J., and Jacobs and Price, JJ., dissenting); *Commonwealth v. Modich,* 233 Pa.Super. 92, 334 A.2d 717 (1975) (Price and Van der Voort, JJ., dissenting); *Commonwealth v. Reeves,* 223 Pa.Super. 51, 297 A.2d 142 (1972); Pa.R.Crim.P. 101. Accordingly, if the warrant was invalid, the arrest was illegal.

> [It is settled that] before a warrant for either arrest or search can issue . . . the judicial officer issuing such a warrant [must] be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant.

> *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971).

 In the present case, the information supplied the justice of the peace by the complaint was not sufficient to support an independent judgment of probable cause. The complaint contained nothing except an accusation that at such and such times and places appellant had committed two thefts; no facts were recited by which the justice of the peace could appraise the accuracy of these accusations. This was the situation in *Whiteley,* where the warrant was held invalid because the affidavit on which it issued alleged only that the defendant had broken into a building; no supporting facts were recited. The question, therefore, is whether the justice of the

---

4. *See* footnote 2, *supra.*

peace was supplied with any information other than the complaint.

This question was addressed at the suppression hearing. There the Commonwealth called the trooper who had obtained the warrant. On cross-examination the following occurred:

Q. Trooper Harnish, I show you a piece of paper purporting your signature at the bottom. It's a criminal complaint. Is that your signature appearing thereon?

A. It is.

Q. Is that one and the same as the arrest warrant which you testified you typed in order to arrest the defendant, Charles Flowers?

A. Yes.

Q. Did you sign your name under oath before Justice of the Peace Paul Cassel?

A. Yes, on December 29.

Q. And were you sworn in by Justice Cassel?

A. Yes. Yes, at the time.

Q. Did you give him any other information other than that which appeared on the arrest warrant?

A. I don't recall that I did, other than that we had information from a—At the time I obtained this warrant, there was also another warrant obtained from the accomplice, Mr. Helton. I don't recall if I explained all the details to Justice Cassel.

Q. As far as you can recall, you didn't give him any information that's not already in there.

A. As far as—What are you referring to, Mr. Glazier?

Q. I'm just asking if there was any other information you gave the justice that might not be in that piece of paper.

A. I'm sure I did, but I don't recall what I told him. I gave him the facts that led to the arrest.

Although the district attorney and the lower court also questioned the trooper, they only asked what facts the trooper himself knew; they did not ask which of these facts he had supplied to the justice of the peace. The justice himself was not called; and if there was a transcript of what the trooper had told him, it was not offered in evidence.

In appraising the record, the test we must apply is that the Commonwealth has the burden of proving that the justice of the peace as the issuing authority was supplied with sufficient information to support an independent judgment of probable cause. *See generally Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Commonwealth v. Davenport,* 453 Pa. 235, 308 A.2d 85 (1975); *Commonwealth v. Davenport,* 449 Pa. 263, 295 A.2d 596 (1972); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968); *Stoutzenberger Appeal,* 235 Pa.Super. 500, 344 A.2d 668 (1975); Pa.R.Crim.P. 323(h).

It will have been observed from the foregoing quotation of the trooper's testimony that the only evidence of what information the trooper supplied to the justice of the peace is the sentence, "I gave him the facts that led to the arrest." This testimony was insufficient for two reasons.

In the first place, the trooper himself undercut his testimony so sharply that no weight can be placed on it. Thus he first said: "I don't recall that I did [give the justice any information outside the complaint]"; then, that "I don't recall if I explained all the details to Justice Cassel"; and finally, "I'm sure I did [give the justice information outside the complaint], but I don't recall what I told him. I gave him the facts that led to the arrest."

In the second place, even if the trooper's inability to recall is ignored, he never explained what he meant by "the facts that led to the arrest."

It is arguable [5] that the trooper was referring to his direct testimony at the suppression hearing. On direct he was asked, "What information did you have to substantiate your warrant?", to which he replied: "Information from an accomplice who was also involved with the defendant in two counts of theft of copper wire from Billmeyer Quarry." The following testimony shortly followed:

Q. What did he tell you?

A. The accomplice or the defendant?

Q. First of all, any information that you had to get this warrant. Did you have any other information other than the statement from Mr. Helton [the accomplice]?

A. Yes, I did. We also had a registration number of a car that was driven to Gordon Waste Company in Columbia. The occupants from that car sold to the Waste Company copper wire taken from Billmeyer Quarry.

On the basis of that registration number which was issued to Helton, he was questioned by me on December the twenty-eighth, 1973, at his home. At that time information was received from him that the defendant, Charles Flowers, was an accomplice in both instances, referring to December the twenty-fifth and also December the ninth, 1973.

Q. Did you obtain a warrant then?

A. Yes I did.

(N.T. 4–5.) [6]

5. Whether the Commonwealth advances this argument we cannot tell, for the Commonwealth has chosen, without explanation to us, not to file a brief.

6. The trooper supplemented this testimony in response to questions by the court, but not significantly (except, perhaps, to weaken it):

Q. What knowledge did you have that these thefts were committed prior to going to the squire for this arrest warrant?

A. The information from the accomplice, James Helton, implicating Mr. Flowers.

From this it appears that the trooper was *able* to supply the justice of the peace with sufficient information to support an independent judgment of probable cause; it does not, however, appear that in fact he *did*. There is no way for us to tell what the trooper meant by his testimony that he gave the justice "the facts that led to the arrest." What facts? Did he, for example, say something like this? "Justice, you'll see from this complaint that there were two thefts of copper wire from the Billmeyer Quarry. We checked out the registration number of the car that was used by the persons who sold the wire, and the owner of the car has confessed to the thefts and has identified Charles Flowers, the person named in the complaint as an accomplice." The trooper might well have said this, or something like it; at least his testimony is consistent with such a hypothesis. If he did, however, he did not supply the justice with sufficient information to support an independent judgment of probable cause, for the justice had no basis of appraising the reliability of the information: Who had said what the registration number was? Who had said that the occupants of the car had sold wire from the Billmeyer Quarry? How did they know? To whom had the car owner confessed? What had that person said the owner had said?

■ ■ Without the answer to such questions, no warrant could validly issue. *Spinelli v. United States*, 393

Q. Did you go to the various places such as Gordon Waste, to investigate the matter?
A. Yes, but I don't recall whether I called them or went personally there, but I contacted a Harry Yohe who had called the barracks several days before I obtained the warrant.
Q. You mean there was a report of the theft?
A. Oh, yes.
Q. You know of that.
A. Yes, I was aware of the theft.
Q. Did you know of the other theft, too?
A. I did not know that the defendant was involved in the other theft until talking with Mr. Helton.
(N.T. 10–11.)

U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). It is not enough to say that the trooper might have given the justice the answers, for it is at least equally possible that he might not have. It follows that the Commonwealth did not meet its burden of proof; evidence consistent with two inconsistent propositions proves neither. *McCormick, Evidence,* § 185 (1972); 1 *J. Wigmore, Evidence* §§ 31, 32 (1940, Supp.1975).[7]

Before proceeding to the remaining question, an observation regarding the Rules of Criminal Procedure is in order. It may be that in fact the trooper did supply the justice of the peace with sufficient information to support an independent judgment of probable cause, and that the failure of the record to disclose this fact is attributable to inept presentation of the case. Assuming, however, that the trooper did not supply such information, his error was practically invited by the rules.

7. In its opinion the lower court states that "Defendant's [contention that the arrest was unlawful is] without merit. The court found as a fact that the warrant was issued upon probable cause and the facts developed at the suppression hearing speak for themselves. The theory that the warrant did not set forth grounds for arrest based on *Whiteley v. Warden,* 401 U.S. 60 [560] [91 S.Ct. 1031, 28 L.Ed.2d 306] is untenable. *Whiteley* involved a case where a tip was the only information the officer had when he applied for the arrest warrant. The procedure followed in this case complied with Pa.R.Crim.P. 133 and 134." (Opinion of lower court at 4.) This misconstrues *Whiteley.* As has been discussed, the question is not what "information the officer had when he applied for the arrest warrant," but what information the justice of the peace had when he issued the warrant. While we are bound by a lower court's finding of fact, *see Commonwealth v. Bruno,* 466 Pa. 245, 255, 352 A.2d 40, 45 (1976) (citing *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972)), this is so only when the finding is legally pertinent and is supported by sufficient evidence. Here, the court's finding that "the warrant was issued upon probable cause" satisfied neither of these requirements. It is evident from the court's discussion of *Whiteley* that the court meant that the trooper had probable cause, which is not pertinent; the court made no finding that the justice of peace had probable cause, and indeed, as has been discussed, it could not have made such a finding, for the evidence was insufficient to support it. As regards the court's reference to Rules 133 and 134: the rules are discussed *infra.*

Rule 133 sets forth the form of complaint to be used when a police officer applies for an arrest warrant. The pertinent paragraphs, paragraphs 3 and 4, have been quoted *ante* at 364. As there appears, the officer is instructed that in completing the complaint he is to "[s]et forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. In a court case neither the evidence nor the statute alleged violated need be cited, nor shall a citation of the statute allegedly violated, by itself, be sufficient . . . ." Nowhere is the officer instructed to set forth sufficient facts to show that there is probable cause for the issuance of an arrest warrant. It is therefore hardly surprising that in the present case the trooper did not set forth such facts but did only what the form of complaint instructed him to do.

The only indication in the rules that a warrant may not issue except upon information sufficient to support an independent judgment of probable cause is in Rule 134, which provides:

(a) In any proceeding initiated by complaint, the issuing authority shall ascertain that:

. . . . . . . .

(2) there is probable cause for the issuance of process;

. . . . . . . .

(b) Upon ascertaining the above matters, the issuing authority shall

. . . . . . . .

(2) issue a summons or warrant of arrest as the case may be.

The provisions of Rules 133 and 134 are in striking contrast to the provisions of Rules 2001–2010, which govern the issuance of search warrants. There the officer applying for the warrant is meticulously instructed with respect to his responsibility to set forth sufficient

information to support an independent judgment on the part of the issuing authority that probable cause for the search exists. In addition, to avoid the problems that were encountered when some of the information was set forth in the application for the warrant and some was given by oral statement when submitting the application, it is specified that "[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits," Pa.R. Crim.P. 2003(a). *And see Commonwealth v. Milliken,* 450 Pa. 310, 312–15, 300 A.2d 78, 80–81 (1973).

It is not apparent why the rules should thus distinguish between the procedures to be followed when applying, on the one hand, for an arrest warrant, and on the other, for a search warrant. Both sorts of warrant depend for their validity upon the issuing authority's independent judgment of probable cause. *Whiteley v. Warden, supra.* At the least, this is a matter that should be reviewed by the Procedural Rules Committee.

## II

■■ Since the warrant was invalid, the arrest was unlawful, and the only remaining question is whether appellant's statement was the result of the arrest. In answering this question, the test to be applied is

"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . . "

. . . the challenged evidence may be purged of the primary taint only (1) if it results from "an intervening independent act of a free will" . . . or (2) if the connection between the arrest and the evidence (confession) has "become so attenuated as to dissipate the taint." *Betrand Appeal,* 451 Pa. 381,

388, 303 A.2d 486, 490 (1973), citing and quoting from *Wong Sun v. United States*, 371 U.S. 471, 486, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Here, neither of these requirements was satisfied. There was no attenuation; as has been noted, appellant's statement followed within two hours of the arrest. Neither can it be maintained that there was an intervening act of free will. It appears from the testimony at the suppression hearing that after arresting appellant and taking him to the State police barracks, the trooper warned appellant of his constitutional right to remain silent. The trooper was asked by the district attorney, "What was your understanding as far as his knowledge of his rights?", to which the trooper replied, "He understood everything." (N.T. 7.) This was insufficient to show waiver.[8] It was the Commonwealth's burden to prove waiver by a preponderance of the evidence. *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972). "He understood everything" is not evidence; it is a mere conclusion.[9] "[A] valid waiver will not be presumed . . . simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed. 2d 694 (1966). Mere giving of the *Miranda* warnings does not dissipate the taint of an illegal arrest.

8. Appellant testified that he was intoxicated when arrested and that but for that he would not have given a statement. (N.T. 14.) The lower court did not believe this testimony, however, and it therefore can be given no weight. *See* footnote 9, *infra*.

9. The lower court stated at the conclusion of the suppression hearing that "[t]he Court finds all the facts testified to by Trooper Harnish of the Pennsylvania State Police and also considering the complaint and arrest warrant issued in this case, and the Court concludes as a matter of law none of the defendant's constitutional rights under the United States or the Pennsylvania Constitution were violated, and therefore concludes as a matter of law were not violated. (*Sic*; N.T. 18–19.) The court made no finding of waiver; nor was the evidence sufficient to permit it to. There is therefore no finding that binds us. *Cf.* footnote 7, *supra*.

The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factors to be considered. The temporal proximity of the arrest and the confession [footnote omitted], the presence of intervening circumstances, see *Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct [footnote omitted] are all relevant. See *Wong Sun v. United States*, 371 U.S., at 491, 83 S.Ct., at 419. The voluntariness of the statement is a threshold requirement. *Cf.* 18 U.S.C. § 3501. And the burden of showing admissibility rests, of course, on the prosecution [footnote omitted].

*Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L. Ed.2d 416 (1975).

In addition, it appears from the trooper's testimony at trial that appellant's statement was not an act of free will, but rather occurred as a direct result of his illegal arrest. Thus, at trial, preliminary to the admission into evidence of the statement, the trooper testified:

Q. Now what was Mr. Flowers' response as far as whether he understood his rights?

A. He indicated he did.

Q. And what was his response as far as whether any force or threats had been used against him?

A. That no force had been used or threats.

Q. Did he advise you he did want to make a statement?

A. Not at first. He denied being involved, and that continued for approximately a half an hour. Then he talked with another individual who was also at the barracks. He then decided he would give a statement concerning both crimes—that he was involved in both. (N.T. 48–49.)

Accordingly, appellant's statement should have been suppressed.

The judgment of sentence is reversed and the case remanded for new trial.

CERCONE, J., concurs in the result.

PRICE and VAN der VOORT, JJ., note their dissents.