## Commonwealth v. Burgess

*Michael Kosteleba, Assistant District Attorney,* for Commonwealth.

*Bruce S. Miller,* for defendant.

TOOLE, *J.,* June 11, 1980—John Burgess (hereinafter referred to as Burgess) was employed by Allegheny County as a deputy sheriff from February, 1972 to July, 1973. During this period of employment, Burgess attended the Pennsylvania State Police Academy from February 28, 1972 to May 5, 1972, where, as part of the curriculum, he received extensive training and education in the use of lethal weapons.

In July of 1973 Burgess began working as a municipal police officer for the Mount Lebanon Police Department. As part of his duties, Burgess received annual training in lethal weapons from that department.

Sometime prior to October 25, 1978 Burgess accepted temporary work with Wackenhut Security in executive protective service in conjunction with the Wilkes-Barre Publishing Company strike in

Wilkes-Barre, Pa. Burgess utilized vacation time, holiday time, and pass days to accomplish this moonlighting service.

On October 25, 1978 an incident occurred at or about the premises of the Wilkes-Barre Publishing Company, 15 North Main Street, Wilkes-Barre, Luzerne County, Pa. Burgess, who was then working in the security position, was present at the scene when certain Wilkes-Barre police officers responded and one such officer removed a revolver from Burgess.

Without further reciting the details, suffice it to say that on the date of the incident, Burgess was not certified under the Lethal Weapons Training Act[1] (hereinafter referred to as L.W.T.A. or the act). It is admitted, however, that Burgess in December of 1978 applied for certification under the L.W.T.A., and that on or about March 21, 1979 he was granted a waiver of compliance with the training and education requirements of the act. He was subsequently certified thereunder. It is also admitted that on the date in question, October 22, 1978, Burgess was not working in his capacity as a Mount Lebanon police officer.

On August 29, 1979 Wilkes-Barre Police Chief J. R. Swim filed a criminal complaint against Burgess charging him with carrying a firearm while privately employed in a security position without having obtained certification from the Commissioner of the Pennsylvania State Police in violation of the provisions of the L.W.T.A.

The magistrate, having determined at a scheduled preliminary hearing, that a prima facie case had been established, forwarded the matter to the

---

1. Act of October 10, 1974, P.L. 705, 22 P.S. §44(b).

district attorney for consideration and appropriate process under the Rules of Criminal Procedure.

On January 21, 1980 Burgess, through counsel, filed a "Petition to quash transcript and dismiss prosecution" contending the following errors were committed requiring dismissal:

1. That the complaint and affidavit did not establish with the required particularity probable cause for the issuance of process.

2. The affidavit and criminal complaint charge a violation of a nonexistent section of the L.W.T.A.

3. That defendant, by virtue of his employment as a police officer and/or because of the extensive training he had received with regard to the use of lethal weapons, was exempt from the provisions of the L.W.T.A.

4. Under all the circumstances, the charges should be dismissed as a de minimis infraction under section 312 of the Crimes Code, 18 Pa.C.S.A. §312, as amended.

A hearing on the petition was scheduled for January 31, 1980. On January 25, 1980 the district attorney of Luzerne County filed a criminal information against Burgess charging him with being, on October 25, 1978:

". . . a privately employed agent of the Wilkes-Barre Publishing Company, [who] did unlawfully carry a lethal weapon as an incidence to his employment without complying with the provisions of the Lethal Weapons Training Act of 1974, October 10, P.L. 705, No. 235. . . ."

At the scheduled hearing before the undersigned, the parties presented oral argument on the issues

and indicated that they would ultimately file stipulated facts and submit briefs. A copy of the stipulation is attached hereto [Appendix A].

On February 8, 1980 Burgess, represented by counsel, entered a plea of not guilty to the charges contained in the information and requested a jury trial.

On April 30, 1980 this court, by order, discharged the rule to show cause issued upon Burgess' petition and denied his motion to dismiss the charges. This opinion is filed in support of that order.

At the time of the hearing on the rule, the court questioned the propriety of the procedure employed by Burgess in raising the issues in this proceeding. The proper method to attack a preliminary hearing because of alleged defects or irregularities is a writ of habeas corpus, and not a motion to quash or dismiss. See Com. v. Hetherington, 460 Pa. 17, 331 A. 2d 205 (1975); Com. v. Gordon, 254 Pa. Superior Ct. 267, 385 A. 2d 1013 (1978).

We also note that since the district attorney has filed an information in this matter, we assume that he has made an independent examination and analysis of the evidence, and has apparently concluded that probable cause does exist and is of sufficient quality to warrant and sustain the filing of an information and the processing of this matter to trial. Under these circumstances, the objections may be improper and untimely. See Com. v. Krall, 452 Pa. 215, 304 A. 2d 488 (1973). However, since the Commonwealth did not seriously oppose the petition on procedural grounds, and because of the importance of the questions involved, we have decided to entertain and answer the issues raised by Burgess in this matter.

## I

The major issue raised in this proceeding is whether a municipal police officer who works in a private capacity as a security guard during off-duty hours[2] is required to be certified pursuant to the terms of the L.W.T.A.

Burgess contends that a moonlighting police officer, because of his position as a police officer, and/or because of the extensive lethal weapon training he has or might have received, is exempt from the provisions of the act. In support of his position, he has cited and relies upon the legislative history of the act. No other authority, directly on point, has been offered or cited to the court by either counsel. While this court has found no case previously deciding this issue in this Commonwealth, we have secured a copy of an unreported opinion written by a deputy attorney general concerning this identical issue.[3] We adopt this unreported opinion, a copy of which is attached to this opinion.

In resolving the issues, we point out that a police officer, performing moonlighting duties as a security officer, does not perform any such services by virtue of the authority and powers he possesses as a police officer. Indeed, to do so would be a criminal

2. This includes hours between shifts, vacation time, holiday time, and personal leave or pass days.

3. This opinion [see Appendix B] was written by Michael H. Garrety, Esq., presently a member of the bar of this county, who then served as a deputy attorney general. We further note that this unreported opinion was known to defense counsel but never cited or presented to the court for its consideration for guidance.

violation of the Act of June 4, 1937, P.L. 1595, sec. 5,[4] which provides, inter alia:

"No . . . police . . . or other peace officer of this Commonwealth, or of any political subdivision thereof . . . shall perform, directly or indirectly, any official services or official duties for any person, association or corporation, or receive, directly or indirectly, any compensation, gifts or gratuities from any person, association or corporation during the period of his official services. . . ."

Any moonlighting officer violating this act, or any person or corporation violating the act by paying such officer, is guilty of a misdemeanor and upon conviction can be sentenced to pay a fine of not less than $100, nor more than $500, or to undergo imprisonment for a period of not less than 90 days, nor more than two years, or both.[5]

Since a municipal police officer moonlighting as a security officer cannot then perform such services as a police officer, it is clear that his capacity must be that of a privately employed security agent. In that latter capacity, he is subject to the provisions of the L.W.T.A.

We concur with the opinion of the attorney general and hold that when a police officer performs security service for a private entity and receives directly or indirectly any form of compensation for such service, such officer is required to be certified under the provisions of the L.W.T.A. if he carries a firearm or other lethal weapon. We are also satisfied that the commissioner's power to grant waivers is limited to the education and training require-

---

4. 16 P.S. §7514.

5. 16 P.S. §7515.

ments of the act and does not extend to all of the provisions thereof. We therefore hold and declare that no police officer is, by virtue of his employment or training as a police officer, exempt from the provisions of the L.W.T.A. If in the course of private employment as a security officer he carries a lethal weapon, he must comply with the provisions of the act and if he does not, he may be found guilty of a misdemeanor and subjected to the punishments provided for by the act.

We are not unmindful that this decision will affect many moonlighting police officers throughout this Commonwealth, and that it may well have far reaching effects in the security field. However, those difficulties are legislative matters rather than judicial, and those arguments are best addressed to the legislature rather than the courts.

## II

We also reject Burgess' argument that the complaint and affidavit presented to the magistrate did not establish probable cause for the issuance of process, as required by Pa.R.Crim.P. 119, and as outlined in Com. v. Flowers, 245 Pa. Superior Ct. 198, 369 A. 2d 362 (1976).

We have thoroughly examined both the affidavit and complaint filed in this matter, and we are satisfied that sufficient facts were alleged in both instruments to permit and warrant the magistrate in concluding that probable cause did exist and upon which he could appropriately issue an arrest warrant.

## III

We also find no fatal error in the magistrate's permitting the Commonwealth to amend the com-

plaint and affidavit to correctly state the statutory section allegedly violated in this matter. Under Pa.R.Crim.P. 132 the complaint need only summarize facts sufficient to advise the defendant of the nature of the offense charged, and "neither the evidence nor the statute allegedly violated need be cited." Certainly if the statute need not be cited, no fatal defect occurs if it happens to be included or if it is erroneously cited. We are satisfied that the amendment was proper under Pa.R.Crim.P. 150. The error was at best an informal defect and did not prevent the substantive content of the complaint and affidavit from being plainly understood. The factual allegations contained in the complaint and affidavit were more than sufficient to advise defendant of the nature and scope of the charge, and the amendment did not prejudice his rights or position in any manner or form, nor did it violate any rule of procedure or law cited or known to this court.

## IV

It is not necessary, nor in our opinion, would it be proper for us on preliminary motion, to determine whether the violation alleged in this case constitutes a de minimis infraction under section 312 of the Crimes Code. A review of section 312 reveals that a de minimis determination must be made by the court on the basis of some factual or evidentiary presentation. If the court decides to dismiss the prosecution under this section, and the moving party is defendant, the court is then required to file a written statement of its reasons. See Com. v. Houck, 233 Pa. Superior Ct. 512, 335 A. 2d 389 (1975); Com. v. Schnabel, 236 Pa. Superior Ct. 280, 344 A. 2d 896, 898 (1975).

Under the circumstances, we are satisfied that the motion is premature. Accordingly, the same is denied without prejudice to Burgess to raise the same if appropriate at the time of the trial.

## APPENDIX A
## STIPULATIONS OF COUNSEL

1. John Burgess attended the Pennsylvania State Police Academy from February 28, 1972 to May 5, 1972.

2. While attending the Pennsylvania State Police Academy, as part of its curriculum, John Burgess received extensive training and education in the use of lethal weapons.

3. John Burgess was employed by Allegheny County as a deputy sheriff from February, 1972 to July, 1973.

4. John Burgess began working for the Mount Lebanon Police Department as a municipal police officer in July, 1973.

5. As part of his duties as a municipal police officer, John Burgess received annual training in lethal weapons from the Mount Lebanon Police Department.

6. On or about October 22, 1978 John Burgess, while still on the payroll of the Township of Mount Lebanon as a police officer, accepted temporary work with Wackenhut Security in executive protective service in conjunction with the Wilkes-Barre Publishing Company strike in Wilkes-Barre, Pa., utilizing vacation time, holiday time, and pass days to accomplish the same.

7. On October 25, 1978 the date of the alleged

offense herein, John Burgess was carried on the payroll records of the Mount Lebanon Police Department as having a pass day or day off.

8. On October 25, 1978 John Burgess was not certified under the Lethal Weapons Training Act.

9. During the month of December, 1978 John Burgess applied for certification under the Lethal Weapons Training Act, and on or about March 21, 1979, because of his previous equivalent training, he was granted a waiver of compliance with the training and education requirements of the Lethal Weapons Training Act and was subsequently certified thereunder.

10. On October 25, 1978 the date of the alleged offense herein, John Burgess was not working in his capacity as a Mount Lebanon police officer.

## APPENDIX B

Commonwealth of Pennsylvania
February 3, 1977

Subject: Act 254 of 1976 (Amendment to Lethal Weapons Training Act)

To: Colonel James D. Barger
    Commissioner
    Pennsylvania State Police

From: Michael H. Garrety, Deputy Attorney General

You have requested our opinion on two issues involving the Lethal Weapons Training Act, Act of October 10, 1974, P.L. 705, 22 P.S. §§41 et seq. (Act 235), as amended on November 23, 1976 by Act 254.

1. Act 235 applies to local, state and federal employees performing private security work during off-duty hours.

The term "privately employed agents" is defined by Act 254, §1, to include

. . . any person employed for the purpose of providing watch guard, protective patrol, detective or criminal investigative services either for another for a fee or for his employer. Privately employed agents do not include local, State or Federal Government employes or those police officers commissioned by the Governor under the Act of February 27, 1865 (P.L. 225, No. 228).*

You have asked whether municipal police officers who work in a private capacity as security guards, protective patrolmen, detectives, or criminal investigators during off-duty hours are "privately employed agents" and thus required to be trained under Act 235.

While municipal police officers are indeed government employees, we do not think the legislature intended to exempt them from the provisions of Act 235 when performing security services in a purely private capacity. Police officers are trained in the use of lethal weapons, but most government employees are not. In view of the legislative findings expressed in Act 235, surely it cannot be maintained that government employees such as clerks, secretaries, or attorneys would not have to comply with the training requirements of Act 235 if they desired to perform security work during off-duty hours, merely because at other times they are publicly employed.

Moreover, specific language could have been used if the legislature had intended only to exempt municipal police officers and other government

---

*This reference is to 38 P.S. §§31 et seq., permitting the Governor to appoint railroad police.

employees in the field of law enforcement. The only logical construction of the statutory exception for local, state, and federal government employees is that the legislature intended to exempt those whose use of lethal weapons is limited exclusively to their functions as public employees. Thus, it is our opinion, and you are so advised, that all local, state, and federal government employees performing private security work must comply with the training and education requirements of Act 235.

2. The Commissioner's power to grant waivers from compliance with the provisions of Act 235 is limited to the education and training requirements.

Act 254 authorizes the Commissioner to grant waivers from compliance with the provisions of Act 235. You have asked whether this power extends to all provisions of Act 235 or merely to the education and training requirements.

Section 3 of Act 254, which amends §5 of Act 235 relating to the powers and duties of the Commissioner, is somewhat ambiguous in its reference to waivers. However, §2 of Act 254 states as follows:

(b) All privately employed agents, except those who have been granted a waiver from compliance *herewith* by the commissioner who, as an incidence to their employment, carry a lethal weapon shall be required to attend the program established by subsection (a) of this section in accordance with the requirements or regulations established by the commissioner and upon satisfactory completion of such program, shall be entitled to certification by the commissioner. (emphasis supplied)

Section 2 of Act 254 amends §4 of Act 235, entitled "Education and Training Program." It is clear that the waiver clause in §2 of Act 254 refers only to the education and training program established by

§4(a) of Act 235. Thus, it is our opinion, and you are so advised, that the Commissioner's power to grant waivers is limited to the education and training requirements of Act 235 and must be exercised in accordance with the standards established by regulations.