479 A.2d 1073

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**William PROSDOCIMO.**

Superior Court of Pennsylvania.

Argued April 11, 1984.

Filed Aug. 10, 1984.

Petition for Allowance of Appeal Denied Nov. 21, 1984.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Gary B. Zimmerman, Pittsburgh, for appellee.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal by the Commonwealth from an order of the trial court granting appellee's request for a writ of *habeas corpus* upon finding that the Commonwealth had failed to establish a *prima facie* case against him at a coroner's inquest. For the reasons set forth below, we reverse the order of the trial court and remand this case for trial.

■ In cases of violent or suspicious death, a coroner's inquest may be held in lieu of a preliminary hearing and the coroner or his properly authorized designee may act as committing magistrate or issuing authority. *Commonwealth v. Lopinson*, 427 Pa. 284, 291–292, 234 A.2d 552, 557–558 (1967), *vacated on other grounds*, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968). As at a preliminary hearing, the Commonwealth bears the burden of making a *prima facie* showing that à crime has been committed and that the accused is the person who committed it. *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978); *Commonwealth v. Beatty*, 281 Pa.Super. 85, 421 A.2d 1159 (1980). *See also Commonwealth ex rel. Scolio v. Hess*, 149 Pa.Super. 371, 27 A.2d 705 (1942) (same burden on challenge to sufficiency of preliminary hearing evidence by *habeas corpus* petition).

This does not mean that the prosecution must prove the accused guilty beyond a reasonable doubt, *Common-*

*wealth v. Rick,* 244 Pa.Super. 33, 366 A.2d 302 (1976), but rather, the prosecution must establish "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Smith,* 212 Pa.Super. 403, 244 A.2d 787 (1968).

*Commonwealth v. Prado,* 481 Pa. at 489, 393 A.2d at 10.

In its brief to this Court, the Commonwealth has accurately summarized the facts shown by the testimony produced at the inquest.

Throughout the four-year period preceding the June 14, 1979 slaying of Gary DeStefano, Gerald Walls and DeStefano worked together transporting drugs from Florida to the northern states. Among the individuals to whom Walls transported and sold drugs was the appellee[ ], William Prosdocimo. Approximately five days prior to DeStefano's death, Prosdocimo placed an order with Walls requesting delivery of three to five hundred pounds of marijuana and fifty thousand or more methaquaalude tablets. However, unknown to Walls and DeStefano, Prosdocimo, together with Charles Kellington and Robert Bricker, contrived a plan whereby the three would "rip-off" the drugs from Walls at the time of delivery. The "rip off" was to entail "steal[ing], stick[ing Walls] up" or doing ["[w]hatever you had to do to get [the marijuana]"], including killing Walls. Prosdocimo indicated that once the marijuana was taken from Walls, it would be given to a Charles Bonasorte to sell.

Walls obtained approximately one hundred and fifty-eight pounds of marijuana and approximately ten thousand methaquaalude tablets in order to fill Prosdocimo's order. Together with DeStefano, he packaged the marijuana in large plastic garbage bags in the trunk of DeStefano's automobile, and the remainder of the marijuana as well as the [metha]quaalude tablets inside the car. Walls later telephoned Prosdocimo, informing him of the amount of drugs obtained and arranging a meeting place. At approximately 11:00 p.m. on June 14, 1979, Walls and DeS-

tefano drove in the latter's 1975 powder blue Cadillac to the predetermined meeting place in the Greenfield section of Pittsburgh. A short time later, Prosdocimo approached Walls and DeStefano and asked to see the marijuana. Walls proceeded to show the bags to Prosdocimo and then asked the latter if he had the money. Prosdocimo stated that he did not, and that the men would have to go to his house. Walls refused, but Prosdocimo persisted in his attempts to convince them to accompany him to the residence. Prosdocimo then walked around the corner and returned several minutes later, again insisting that the men go to his house. Following Walls' repeated refusals, Prosdocimo suggested that they meet at "Butchie's", an after-hours club in the Market Square section of downtown Pittsburgh. Walls agreed, and he and DeStefano proceeded downtown. Prosdocimo returned to his home, where Kellington and Bricker, both of whom were armed, had been waiting. The men, still intending to "rip off" Walls, sent Kellington to Butchie's Club, where Kellington was to attempt to engage Walls in conversation while Bricker removed the drugs from the DeStefano automobile. Kellington arrived at the bar and began conversing with Walls and DeStefano. Approximately fifteen minutes after Walls' and DeStefano's arrival at the club, the former directed DeStefano to check the car. As DeStefano approached the Cadillac, Bricker called him over to his vehicle. As DeStefano moved his head near the window, Bricker shot him and killed him,[2] and then took the keys to the Cadillac. Approximately ten minutes after DeStefano left the club, Bricker phoned Kellington, informing him that DeStefano was gone and that he[, Bricker,] had the drugs. Kellington then left the club and met Bricker [who was driving] the DeStefano vehicle; the two drove the Cadillac to a parking lot located in the North Side section of the city and transferred the marijuana into Kellington's Jeep. The two men then proceeded to the

Chasmar Bar in the Hazelwood section of Pittsburgh, where they delivered the drugs to Charles Bonasorte.

---

2. The final pathological diagnosis as to the cause of death of Gary DeStefano revealed that the victim died as a result of two gunshot wounds to the left side of the face.

Brief for the Commonwealth at 5–8.

The Commonwealth has proceeded upon the theory that appellee is guilty of second degree murder, or felony murder, 18 Pa.C.S.A. § 2502(b) and (d),[1] as an accomplice, 18 Pa.C.S.A. §§ 306(c), 901–903,[2] in the slaying of Gary DeSte-

1. Section 2502 states in pertinent part:
  § 2502. Murder.
      *    *    *    *    *    *
  (b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
      *    *    *    *    *    *
  (d) Definitions.
      *    *    *    *    *    *
  "Perpetration of a felony." The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

2. Sections 306 and 901 through 903 state in pertinent part:
  § 306. Liability for conduct of another; complicity.
      *    *    *    *    *    *
  (c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:
  (1) with the intent of promoting or facilitating the commission of the offense, he:
  (i) solicits such other person to commit it; or
  (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
  (2) his conduct is expressly declared by law to establish his complicity.
  § 901. Criminal attempt.
  (a) Definition of attempt.—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.
      *    *    *    *    *    *
  § 902. Criminal solicitation.
  (a) Definition of solicitation.—A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or

fano. The Commonwealth argued to the trial court, as it argues here, that when Kellington and Bricker left Greenfield for downtown Pittsburgh, they still intended to use "whatever" force was necessary to obtain the marijuana. The Commonwealth contends that appellee participated in the agreement to "rip off" Walls and that the use of force by Bricker and Kellington was foreseeable. The Commonwealth also asserts that the evidence showed that the conspirators had in fact contemplated the use of force in Greenfield, that that part of the plan to obtain the drugs was not abandoned but only the located of the "rip off" was changed, and that Walls and DeStefano could not reasonably be expected to leave a car laden with thousands of dollars of drugs unguarded. The Commonwealth's conclusion is that the threesome did in fact agree "to rob" [3] Walls

an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

\*    \*    \*    \*    \*    \*

§ 903. Criminal conspiracy.

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

3. Robbery is defined by 18 Pa.C.S.A. § 3701 as follows:

§ 3701. Robbery.

(a) Offense defined.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

and DeStefano and are therefore equally culpable of felony murder.

The trial court disagreed. The court ruled that the killing "did not take place during the [perpetration] of a felony" as defined in § 2502(d). That provision requires that, for a homicide to be considered second degree murder, it must have been committed in furtherance of a "robbery, rape, [ ] deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." Only the crime of robbery has any possible application in the instant case. The trial court went on to emphasize that portion of Kellington's testimony in which he stated that the secondary plan formulated to effect the "rip off" downtown was to be carried out without any violence. Bricker was to have broken into DeStefano's car while Walls and DeStefano were in the bar being kept occupied by Kellington. The court held that, when Bricker and Kellington left Greenfield, they abandoned the original plan "to rob" Walls and DeStefano, but planned only to steal from DeStefano's unoccupied automobile, a "theft". Because theft is not one of those offenses enumerated in § 2502(d), the court ruled that the Commonwealth had failed to establish that appellant could be held criminally responsible for felony-murder. The court thus directed that appellee's petition for a writ of *habeas corpus* be granted and that the charge of criminal homicide be dismissed. The Commonwealth filed this timely appeal.

We agree with the Commonwealth that it carried its burden of proof by making a *prima facie* showing that appellant was an accomplice to a felony-murder. The "meetings", both in Greenfield and downtown, were arranged by appellee and Kellington. Bricker acted at all times with appellee's advice, encouragement, and direction. Kellington, testifying on behalf of the Commonwealth, stated that a drug "rip off" included "whatever you had to do to get" the drugs. Thus, the agreement among appellee, Bricker and Kellington was "open-ended", transcending a multitude of different factual settings and legal constructions. They did not attempt to confine their actions to a

single neat classification, be it "theft" or "robbery". Rather, they intended to commit whatever crime or crimes were necessary to effectuate their ultimate objective of obtaining the drugs. Indeed, according to Kellington's testimony before the coroner, both Kellington and Bricker were armed and, along with appellee, had anticipated killing Walls in Greenfield in order to get the marijuana from him. Perhaps most telling, there was testimony to support the inference that once Bricker noticed that DeStefano was approaching his Cadillac, Bricker found it necessary to lure the victim to Bricker's car and pull the trigger on a .22-caliber pistol scant inches from DeStefano's face in order to more easily gain access to the Cadillac and strip it of its cargo. The crime thus described by Kellington was in fact a felony-murder by Bricker. After a thorough examination of the record, we conclude that there is a *prima facie* showing, at least, that this crime was within the ambit of the agreement of Bricker, Kellington and appellee. Bricker and Kellington, with the assistance, agreement and planning of appellee, were at times prepared to do whatever was necessary, including physical force, to obtain possession of the marijuana. The mere opportunity or desire to acquire possession of the contraband without injury to Walls or DeStefano does not vitiate the reasonableness of this conclusion. Bricker's actions in robbing DeStefano were thus in conformity with his agreement with Kellington and appellee and the shooting was done to facilitate the commission of that crime. *See Commonwealth v. Legg*, 491 Pa. 78, 417 A.2d 1152 (1980); *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312 (1980).

■ The testimony given before the coroner provided reasonable grounds for the belief that appellee participated in and aided Bricker and Kellington in committing a robbery in the course of which Gary DeStefano was killed. The Commonwealth thus carried its burden of establishing probable cause to believe that appellee committed the offense with which he was charged. The trial court therefore erred

in issuing the writ and dismissing the charge of criminal homicide.

For the foregoing reasons, the order of the trial court issuing a writ of *habeas corpus* and dismissing the charge of criminal homicide is reversed; the charge of criminal homicide is reinstated and this case is remanded for trial.

Jurisdiction is not retained.