568 A.2d 974

**COMMONWEALTH of Pennsylvania**

v.

**James Howard BURNS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1989.

Filed Jan. 17, 1990.

Petition for Allowance of Appeal
Denied June 12, 1990.

---

Carmela R.M. Presogna, Asst. Public Defender, Erie, for appellant.

James Blackwood, Asst. Dist. Atty., Erie, for Com., appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

DEL SOLE, Judge:

James Burns, Appellant, was convicted of seven counts of recklessly endangering another person, four counts of aggravated assault and one count of simple assault. Post-trial motions were filed and denied. Burns was sentenced to six to twenty years in prison. On appeal, Burns raises five issues. After considering all five of the issues, we deter-

mine that one has merit. On the basis of that issue we vacate the judgment of sentence on the first count of aggravated assault and remand to the trial court for resentencing. We affirm the remainder of the judgment of sentence.

The facts of the case are not in dispute. One evening, Burns went to the residence of his aunt and cousin. An altercation arose which involved considerable violence. The police were called and an officer arrived at the scene. The officer told Burns to wait while the officer attended to one of the victims. Burns told the officer that he was going to his tractor-trailer truck, which was parked outside the residence, for a cigarette. Instead, Burns left the scene in his truck and led police officers on an hour-chase along the major highways in the northern part of the commonwealth.[1]

David Jarzomski, a mobile CB operator from the Erie County Alert Emergency Communications Response Team, was in constant contact with Burns throughout the chase. At trial, Jarzomski testified that Burns told him that he wouldn't stop for anyone and would run over anyone who got in his way. (Notes of Testimony, 1/10/89. pp. 37—38). A number of police cars were involved in the chase. The police officers testified that when they attempted to pass Burns, he would move his truck to force the officers off the road. When a police car did get in front of the truck, Burns drove right at the police car so that the officer had to accelerate to avoid being hit. When another officer set up a roadblock by placing his police car, with the police lights flashing, in the middle of the road, Burns drove right at the car with no apparent intention of stopping. The police officer had to move the police car to avoid being hit by Burns' truck. (Notes of Testimony, 1/9/89, pp. 86—99).

Burns was eventually stopped by police and arrested. There were no physical injuries sustained by Burns or the police officers during the chase. Burns was convicted of

1. The highways involved were Interstate 90 as well as Routes 8, 17, 89, 430 and 20. At one point the chase even went into New York State. (See Sentencing, Notes of Testimony, 2/22/89, p. 11).

six counts of recklessly endangering the police officers and four counts of aggravated assault (18 Pa.C.S.A. § 2702(a)(1))[2] against the officers. For the first count of aggravated assault, Burns was given three to six years. The trial court included in that sentence the deadly weapon enhancement (42 Pa.C.S.A. § 9721) of one to two years, holding that the vehicle operated by the defendant was a deadly weapon. For the next three counts of aggravated assault, Burns was given an aggregate sentence of three to fourteen years. The other counts against Burns either merged into the aggravated assault counts for the purposes of sentencing or were made to run concurrent with the sentences given for aggravated assault.

We will first discuss the issue which we believe to have merit. We will then discuss the other issues in the order they were raised. Burns argues that the trial court erred when it included the deadly weapon enhancement in the sentence it gave Burns for the first count of aggravated assault. We agree. The deadly weapon enhancement states that:

[w]hen the court determines that a defendant possessed a deadly weapon, as defined in 18 Pa.C.S.A. § 2301 ... during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence range which would otherwise have been applicable.

42 Pa.C.S.A. § 9721, 204 Pa.Code § 303.4

A deadly weapon is defined as:

[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce serious bodily injury.

**2.** A person commits aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) when he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

This court has never ruled that a motor vehicle is a deadly weapon for the purposes of the deadly weapon enhancement. We have noted that it is almost impossible to make a prophylactic rule defining what constitutes a deadly weapon. *Commonwealth v. Taylor*, 346 Pa.Super. 599, 500 A.2d 110 (1985), aff'd. 516 Pa. 21, 531 A.2d 1111 (1987). The weapons used in cases that have applied the deadly weapon enhancement have generally been guns and knives. See *Commonwealth v. McKeithan*, 350 Pa.Super. 160, 504 A.2d 294 (1986). Other definitions of weapons enacted by the General Assembly limit the term "weapon" to include blades, guns, sticks, clubs and other items that are offensive weapons in the traditional sense.[3]

A motor vehicle can be a deadly instrumentality but the General Assembly has enacted specific legislation to deal with the driver of a motor vehicle when the vehicle has caused a death or serious injury. See 75 Pa.C.S.A. § 3732 (Homicide by Vehicle), 75 Pa.C.S.A § 3735 (Homicide by Vehicle While Driving Under the Influence) and 75 Pa.C.S.A. § 3742 (Accidents involving Death or Personal Injury). Because the General Assembly has chosen to deal with motor vehicles in this manner and because we must construe the provisions of a penal statute strictly (1 Pa.C.S.A. § 1928(b)(1)), we hold that the General Assembly did not intend motor vehicles to be considered weapons for the purposes of the deadly weapon enhancement. Therefore, the trial court erred in applying the deadly weapon enhancement to Burns' sentence.

**3.** In 18 Pa.C.S.A. § 907 (Possessing Instruments of a Crime) a weapon is defined as "[a]nything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon."

In 18 Pa.C.S.A. § 912 (Possession of Weapon on School Property), the definition of a weapon includes the definition in § 907 as well as "any knife, cutting instrument, cutting tool, nun-chuck stick, firearm, shotgun, rifle, and any other tool, instrument or implement capable of inflicting serious bodily injury."

Burns also raises the issue that the trial court abused its discretion when it denied Burns' demurrer to the Commonwealth's evidence as well as his motion for a directed verdict to the charge of aggravated assault. Burns argues that when there is no injury underlying a charge of aggravated assault, the Commonwealth must prove that the defendant possessed a specific intent to commit the assault.

First, we hold that Burns has lost his opportunity to challenge the trial court's denial of his demurrer. After his demurrer was denied, Burns proceeded with his defense and eventually took the stand. When a demurrer is denied and a defendant proceeds with the case and presents a defense, the defendant can no longer challenge the order denying the demurrer. *Commonwealth v. Saccol*, 384 Pa.Super. 161, 557 A.2d 1095 (1989). A challenge to the trial court's ruling will be considered a challenge to the sufficiency of the evidence. *Saccol*, supra. Our test for reviewing a sufficiency of the evidence claim is whether the evidence, taken in the light most favorable to the verdict winner, in this case the Commonwealth, supports the verdict. *Commonwealth v. Hoke*, 381 Pa.Super. 70, 552 A.2d 1099 (1989). Our test for a challenge to a denial of a motion for a directed verdict is whether the jury, in considering all the evidence in the light most favorable to the Commonwealth, could have found the defendant guilty. *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975).

Burns is correct in his assertion that in an aggravated assault, where the victim does not sustain serious bodily injury, the Commonwealth must prove specific intent in order to convict the defendant. *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 502 A.2d 241 (1985). Such intent, however, can be proven by circumstantial evidence. *Commonwealth v. Russell*, 313 Pa.Super. 534, 460 A.2d 316 (1983). The evidence presented by the Commonwealth shows Burns bearing down on police officers in his tractor-trailer and forcing them off the road when they attempted to pass him. The Commonwealth also presented testimony that Burns had no intention of stopping for the officers and

would run over anyone who got in his way. Construing this evidence in the light most favorable to the Commonwealth, as we must do, we hold that the evidence supports a finding of specific intent. The jury could have easily determined, from the testimony at trial, that Burns intended to harm any of the officers that got in his way. Therefore, we consider this issue to be meritless.

The next issue Burns raises is that the trial court abused its discretion when it denied a post-trial motion requesting a new trial or an arrest of judgment where the evidence brought forth before the jury was insufficient as a matter of law to establish that Burns possessed the required *mens rea* in the guise of specific intent to commit the crime of aggravated assault. This is basically the same issue as the one raised above. Again, we hold that the jury can infer that specific intent from the circumstantial evidence presented. Therefore, sufficient evidence existed to convict Burns of aggravated assault.

The final two issues Burns raises deal with the discretionary aspects of sentencing. In his brief, Burns includes a separate Rule 2119(f) statement. The matters raised in these issues are also raised as ineffective assistance of counsel claims. In the interests of judicial economy, we will consider the sentencing and the ineffectiveness claims together. First, Burns argues that the trial judge impermissibly took into account the fact that someone could have been killed during the chase and that trial counsel was ineffective for failing to object to the trial court's consideration of this impermissible factor. The trial judge did say at sentencing that deaths could have occurred and that Burns was fortunate that no one was killed. (Sentencing, Notes of Testimony, 2/22/89, pp. 9—13). The trial court, however, did not impose a harsh or patently excessive sentence on Burns.

Aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) is defined as a felony in the first degree. As such, it can be punished with a term of imprisonment not to exceed twenty years. 18 Pa.C.S.A. § 1103(1). Burns was exposed to

sentencing for four counts of aggravated assault. The sentence given was well within the statutory limit as well as the sentencing guidelines. 42 Pa.C.S.A. § 9721. Consequently, Burns does not show us how the judge's admonishment regarding the deaths that could have been caused by the chase affected his sentence. Therefore, this issue is meritless and trial counsel was not ineffective for failing to raise it.

■ Burns' final issue is that the trial court imposed an excessive sentence and that his trial counsel was ineffective for failing to request that Burns receive a psychiatric examination. As we said in the discussion of the previous issue, the sentence given was not excessive. In regards to the failure of counsel to request a psychiatric examination, we note that Burns' history of prior mental illness was put before the court in the pre-sentence report.[4] Trial counsel referred to the pre-sentence report at the sentencing and specifically pointed out Burns' mental health problems. The trial judge stated that he read the pre-sentence report and took into consideration all of the factors reported in the report. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988). The trial court was aware of Burns' history of mental illness when it sentenced him. Burns does not present to us what purpose a detailed psychiatric report would have served in regards to his sentencing.

In order to establish ineffective assistance of counsel, the defendant "must show that counsel's performance was deficient and ... that the deficient performance prejudiced [the]

---

**4.** The pre-sentence report indicates that Burns has had in the past and continues to have mental health problems as well as drug and alcohol related problems. The report adds: "The defendant states his last admission to a mental health unit was in 1983 when he was admitted on two occasions. On the first occasion, the defendant stayed for thirty (30) days, and on the second occasion he stayed for approximately forty-five (45) days. On the first occasion, he was admitted by voluntary commitment. The defendant was suffering from schizophrenia. The second occasion came on court order with the same prognosis: Schizophrenia and drugs/alcohol. The defendant states his drug of choice is cocaine. He further states that he has never been arrested when he was not under the influence of drugs and alcohol." Presentence Report, p. 7

defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) in *Commonwealth v. Pierce*, 515 Pa. 153, 157–158, 527 A.2d 973, 975 (1987). Even if the performance of Burns' trial counsel was deficient for failing to request a psychiatric report, there was no showing that the failure to request such a report was prejudicial to Burns. The trial judge told Burns that he gave him a lighter sentence than he had originally planned to give him after hearing both Burns and his trial counsel speak at sentencing. (Sentencing, N.T. 2/22/89, pp. 17–18). Burns does not show us on appeal how a psychiatric report would have altered the sentence.

Judgment of sentence vacated on the first count of aggravated assault and remanded for resentencing. The remainder of the judgment of sentence is affirmed.