594 A.2d 666

**COMMONWEALTH of Pennsylvania**

v.

**John C. SMOUSE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 25, 1991.

Filed July 10, 1991.

372

Kim W. Riester, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

HESTER, Judge:

John C. Smouse appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on August 15, 1990, following his conviction at a bench trial of third-degree murder. He was sentenced to a term of imprisonment of six to twelve years. In this timely appeal, appellant questions the adequacy of his criminal complaint and challenges the propriety of its authorization for the issuance of process. In addition, appellant asserts that he improperly was denied a preliminary hearing, that the trial court erroneously refused a requested demurrer, and that the evidence presented at trial was insufficient to support his conviction. We find that these issues are without merit and, accordingly, affirm.

The procedural history of this case may be summarized as follows. On September 12, 1989, shortly after David Piergalski's badly beaten body was discovered in Pittsburgh's Schenley Park, appellant was arrested and, by a complaint issued by a deputy coroner of Allegheny County, charged with criminal homicide. Two weeks later, the

Allegheny County Coroner's Solicitor conducted an inquest into Piergalski's death and ordered appellant to stand trial on the charged offense. Following the denial of appellant's omnibus pretrial motion and the waiver of his right to a jury trial, proceedings on the matter began.

On July 18, 1990, appellant was convicted of third-degree murder. One month later, following the denial of post verdict motions, the court imposed the described sentence and recommended that it be served in a minimum security facility. This appeal followed.

Initially, we examine appellant's challenge to the adequacy of the criminal complaint. Appellant contends that the complaint improperly failed to set forth the facts relating to the charged offense in sufficient detail. This contention is without merit.

■ While it is clear that a criminal complaint need not set forth the facts relating to an offense with the particularity of an indictment, *see Commonwealth v. Taraschi*, 327 Pa.Super. 179, 475 A.2d 744 (1984); *Commonwealth v. Wilkinson*, 278 Pa.Super. 490, 420 A.2d 647 (1980), a minimum amount of detail is required. According to Pa. R.Crim.P. 132(6)(a), a complaint in a court case must contain a summary of facts that is sufficient to advise the defendant of the nature of the offense charged. However, neither the statute allegedly violated nor the evidence demonstrating such violation need be set forth. *Id.* Furthermore, a citation to the statute in question, by itself, is insufficient to support a complaint. *Id.*

■ In the present case, the contested complaint accused appellant of committing the offense of criminal homicide in Pittsburgh on September 10, 1989, while acting with Mark A. Glusic. In addition, it stated that appellant intentionally, knowingly, recklessly or negligently caused the death of David Piergalski by beating him about the head and neck. Although the complaint did not identify the precise situs of the killing, the exact time that it occurred, or facts supporting a conclusion that appellant committed the offense in the

manner described, there can be no question that by the information set forth, it generally advised appellant of the nature of the crime for which he was charged. Consequently, we conclude that appellant's claim does not entitle him to relief.[1]

█ Appellant also questions the propriety of the complaint's authorization for the issuance of process. He contends that since a coroner generally lacks the power to act as an issuing authority, the deputy coroner's signature on the complaint rendered the proceedings void ab initio.[2] This issue is frivolous. It long has been clear that in cases involving either violent or suspicious deaths, a coroner or his properly authorized designee may act as an issuing authority. *See Commonwealth v. Prosdocimo*, 331 Pa.Super. 51, 479 A.2d 1073 (1984). Such power was extant at common law, *see Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967), *vacated on other grounds*, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968), and contrary to appellant's assertions, survived both the enactment and the amendment of the Judicial Code. *See* Section 27 of Act 1976, July 9, P.L. 586, No. 142, as affected by Act 1982, Dec. 20, P.L. 1409, No. 326, § 316 [42 P.S. § 20076] (nothing in Title 42 shall impair or limit the existing rights, powers, functions or immunities of any district attorney, sheriff, register of wills or coroner).

We now turn to appellant's contention regarding the denial of his right to a preliminary hearing. Appellant

---

1. Our decision is unaffected by either *Whitely v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), or *Commonwealth v. Flowers*, 245 Pa.Super. 198, 369 A.2d 362 (1977). In those cases, unlike the one presently before us, the question at issue concerned whether the complaint contained sufficient information from which a determination of probable cause could be made for purposes of securing a warrant. Although the facts set forth in each case clearly demonstrate that the complaints contained information that was sufficient to advise the defendants of the nature of the offenses for which they were charged, the respective courts concluded that the complaints, by themselves, would not support a finding of probable cause.

2. Although appellant, by his argument, does not challenge the power of the deputy coroner to act in the coroner's stead, we note that such authority is set forth in 16 P.S. § 1231.

asserts that since the inquest conducted after his arrest was presided over by the Allegheny County Coroner's Solicitor, an official allegedly lacking the authority of a committing magistrate, it did not amount to a preliminary hearing. Although appellant fails to further clarify his argument on this point, he implies that as there is no indication in the record of any proceeding satisfying the requisites of a preliminary hearing, his due process rights under the constitutions of both the United States and Pennsylvania were violated. This claim is devoid of merit.

Initially, we note that appellant does not argue that the coroner's solicitor did not have the power of a deputy coroner and, consequently, could not properly act in the coroner's place. Accordingly, for the purposes of argument, we will *assume* the existence of such power. Thus, resolution of the issue posed hinges upon whether the Coroner of Allegheny County possessed the authority of a committing magistrate.

In *Commonwealth v. Prosdocimo, supra,* we indicated that in cases of violent or suspicious death, a coroner or his properly authorized designee may act as a committing magistrate and conduct an inquest in lieu of a preliminary hearing. Since the coroner's solicitor, the coroner's properly authorized designee, conducted an inquest in the matter following appellant's arrest for criminal homicide, we conclude that his preliminary hearing rights were not violated. Consequently, appellant's claim of error must fail.[3]

---

**3.** We note that appellant also asserts that the coroner's solicitor, which he at times confuses with the coroner, engaged in ex parte communication with police officers in connection with the preparation of the complaint. In addition, he contends that the coroner's solicitor was a material witness with respect to the autopsy report. Consequently, he implies that the solicitor properly could not have conducted the preliminary hearing. However, as our review of the record reveals no evidence indicating that the solicitor participated in the preparation of either the complaint or the autopsy report, we conclude that appellant's claims are unsupported by the record and afford him no basis for relief.

■ Appellant also asserts that the trial court erroneously refused his demurrer with respect to the crimes of first and second-degree murder, offenses falling within the ambit of the general charge of criminal homicide. *See* 18 Pa.C.S. § 2501. However, since a defendant waives his right to challenge a trial court's denial of a demurrer by presenting his case, *see Commonwealth v. Burns*, 390 Pa.Super. 426, 568 A.2d 974 (1990), and our review of the record reveals that appellant presented evidence following the trial court's decision, we find that he is not entitled to relief on his claim.[4]

Finally, we turn to appellant's challenge to the sufficiency of the evidence supporting his conviction. In support of this challenge, which we find is without merit, appellant asserts that the evidence failed to demonstrate beyond a reasonable doubt that he inflicted the fatal blows upon Mr. Piergalski, that he committed the killing with malice, that the killing was not the result of a sudden passion or a mistaken belief as to the necessity of acting in self-defense, and that he did not act in self-defense.

■ Preliminarily, we note that our standard for reviewing challenges to the sufficiency of the evidence is well-established. In *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), our Supreme Court discussed that standard and stated:

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the [fact-finder] could reasonably have determined all elements of the crime to have been established beyond a

4. In an attempt to obtain review of this issue, appellant relies upon authority indicating that in cases where a defendant presents a defense following the denial of a demurrer, his challenge to the court's decision will be treated as one relating to the sufficiency of the evidence. *See Commonwealth v. Burns, supra.* However, as a challenge to the sufficiency of the evidence logically *presupposes* a conviction for the offense to which it relates and the trial court, by its decision, acquitted appellant of both first and second-degree murder, this principle has no impact upon our resolution of the matter.

reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976).

*See also Commonwealth v. Scott*, 376 Pa.Super. 416, 546 A.2d 96 (1988). Keeping these principles in mind, we must examine the evidence presented at trial and, thereafter, consider each of appellant's claims. Our review of the record reveals the following facts.

On the morning of September 10, 1989, while Jerome Freundlich was walking his dogs in an area of Schenley Park often frequented by members of the gay community, he discovered the body of David Piergalski. After determining that Piergalski, who had suffered numerous injuries, including abrasions, hemorrhages, and fractures of the facial skull, was not breathing, he requested a passing motorist to summon the police. Two days later, as the investigation into the beating death was proceeding, appellant, whose blood had been discovered on Piergalski's shirt, surrendered to the police and was charged with criminal homicide.

On the evening prior to Freundlich's grisly discovery, appellant, who resided with both his mother and a cousin, Robert Borowski, woke Borowski and inquired as to whether he would care to accompany him to the Oakland section of Pittsburgh so that they could "party." After Borowski declined that invitation, appellant drove away in their jointly-owned van.

The following morning, when Borowski awoke, appellant requested him to examine the interior of the van. Borowski complied with this request and discovered a large amount of blood on its carpet and walls. Borowski asked about the blood. Appellant, who sometimes drove to Schenley Park to

harass homosexuals, admitted that while in the park with a friend, Mark Glusic, he permitted a gay man to enter the van. Appellant told Borowski that when the man made sexual advances toward him, a scuffle ensued, and that during the course of this altercation, he punched the man several times. Appellant stated that he suffered a minor cut on the leg, but was able to throw the victim out of the van. Appellant then indicated that he drove away.[5]

Appellant later attempted to clean the van. Although he scrubbed the carpet with soap and water, he was unable to remove all traces of the previous evening's activities. While appellant removed enough blood to render enzyme testing of it impossible, subsequent analysis determined that the blood matched Piergalski's general type. In addition, examination of fibers extracted from the carpet containing the blood were found to be consistent with those discovered on the decedent. Appellant's shoes also were stained with blood matching Piergalski's type.

On September 11, 1989, after news of the discovery of Piergalski's body began to spread, appellant telephoned his cousin and inquired as to whether he had informed anybody of the previous day's events. Appellant then amended his tale regarding those events by indicating that he saw no injuries on the gay man following the altercation. In addition, he mentioned that the confrontation occurred in Tarentum.

█ Appellant initially asserts that the evidence presented at trial did not demonstrate that he caused the death of Piergalski. Thus, he contends that the evidence failed to establish that he committed the killing necessary to support his conviction for third-degree murder. This claim is frivolous. From the circumstantial evidence set forth above, it is clear that the fact-finder properly could have concluded beyond a reasonable doubt that appellant inflicted blows that resulted in Piergalski's death. Although the evidence does not exclude *all* possibility that a third party may have

5. We note that appellant essentially reiterated this story in his testimony.

committed the crime, we note that the Commonwealth was under no obligation to do so. *See Commonwealth v. Akers,* 392 Pa.Super. 170, 572 A.2d 746 (1990).

Next, appellant asserts that since Piergalski's death was caused by blows inflicted by fists rather than a deadly weapon, the Commonwealth failed to demonstrate that he acted with malice. Even if we *assumed* the factual premise of appellant's assertion, he would not be entitled to relief.[6]

It long has been clear that malice is an essential element of third-degree murder and is the distinguishing factor between murder and manslaughter. *Commonwealth v. Austin,* 394 Pa.Super. 146, 575 A.2d 141 (1990). "Malice in its legal sense exists not only where there is particular ill will, but also where there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Id.,* 394 Pa.Super. at 153, 575 A.2d at 145 (quoting *Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981)). In cases where fists, rather than a weapon, are utilized to commit a killing, malice may not be presumed. *Commonwealth v. Petrino,* 332 Pa.Super. 13, 480 A.2d 1160 (1984). However, it may be inferred from certain circumstances. *Id.* Among the circumstances that should be considered when determining the existence of malice in a case where fists are used to cause a death are the size of the assailant, the ferocity of the attack, its duration, the provocation for it, and the manner in which the fists were used. *See Commonwealth v. Buzard,* 365 Pa. 511, 76 A.2d 394 (1950); *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A.2d 125 (1950).

Instantly, in light of the numerous injuries suffered by Piergalski, including fractures of the skull, it is clear that appellant's assault upon Piergalski was both ferocious and unrelenting. Furthermore, since the evidence demonstrated that on previous occasions appellant had gone to

6. We note that the testimony of the forensic pathologist who conducted the autopsy, Dr. Leon Rozin, seems to indicate that Piergalski's injuries may have been caused by something other than fists.

Schenley Park for the express purpose of harassing homosexuals, we find that the trial court properly could have determined that appellant hated homosexuals and that he had gone to Schenley Park on the fatal evening with the intention of attacking a homosexual. Thus, even though the record demonstrates that appellant was smaller than Piergalski and is silent on the duration of the incident, the court correctly could have found that Piergalski's conduct on that evening did not act as the catalyst for the attack. Consequently, appellant's claim of error in this regard must fail.

Appellant also asserts that since the Commonwealth failed to disprove that he acted under a sudden passion resulting from serious provocation or the mistaken belief that he was entitled to use deadly force to defend himself, matters that would lower his culpability to that of voluntary manslaughter, *see* 18 Pa.C.S. § 2503, his conviction for third-degree murder may not stand. This assertion is without merit.

We first consider the question of whether the evidence disproved that appellant acted under a sudden passion resulting from serious provocation. As stated earlier, the trial court, based upon the fact that appellant previously had gone to Schenley Park to harass homosexuals, properly could have determined that appellant had not been provoked into committing the assault by Piergalski's conduct. Thus, the evidence clearly negated any inference that the crime committed was the result of a sudden passion.

We now turn to the issue of whether the evidence disproved that appellant acted under a mistaken belief that he was entitled to use deadly force to defend himself. It long has been clear that in order to utilize such a mistaken belief to lower the culpability for a killing to voluntary manslaughter, the killing, but for the mistaken belief, must have been justified under the general principles of self-defense. *See* 18 Pa.C.S. § 2503(b). One of the most important principles in any discussion of self-defense as it relates

to a killing is that of retreat, which is mentioned in 18 Pa.C.S. § 505(b)(2)(ii). That subsection indicates that a killing is not justifiable if "the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take."

In the present case, even if we *assumed* that Piergalski were the aggressor in the scuffle, an assumption belied by both appellant's prior conduct and the extensive injuries suffered by Piergalski, the evidence fails to establish that appellant attempted to retreat prior to utilizing deadly force.[7] In view of Piergalski's injuries, appellant must have known that he could have retreated with complete safety. Since appellant failed to comply with the duty of retreat, we conclude that the evidence clearly demonstrated that he had not committed unreasonable belief voluntary manslaughter.

Appellant's last contention is that the Commonwealth failed to disprove that he acted in self-defense. In light of our previous discussion concerning unreasonable belief voluntary manslaughter, we find that the evidence clearly demonstrates the contrary. Accordingly, appellant is not entitled to relief on this matter.

Judgment of sentence affirmed.

---

7. In addition, we note appellant's brief contains no allegation indicating that he attempted retreat.