# Commonwealth v. Murdock

*Luanne Parkonen, assistant district attorney,* for Commonwealth.

*William M. Panella,* for defendant.

MOTTO, *P.J.,* March 30, 2011—Before the court for disposition is the petition for writ of habeas corpus filed on behalf of the defendant Emily Murdock, which asserts that the Commonwealth has failed to establish a prima facie case that defendant's conduct of permitting her daughter to receive a series of rabies shots knowing that the animal that bit her daughter was not a stray and was up to date with necessary shots and vaccines constituted a violation of 18 Pa.C.S.A. §4304, Endangering the Welfare of Children.

On September 12, 2010, Officer James Heaney of the New Castle Police Department was dispatched to Jameson Memorial Hospital Emergency Room in reference to a dog bite victim. Upon arrival, Officer Heaney was met by the mother of the victim, defendant Emily Murdock, who stated that her five-year-old daughter, E.M., had been at Cascade Park in New Castle with her other children playing when a stray dog wandered near the children. Defendant described the dog as a black Shepard-husky mix. As the children were petting the dog, defendant turned away and heard growling, followed by E.M. screaming. She looked back to see her daughter on the ground with the dog on top of her. Defendant ran over to the dog and started to kick it until it ran away. Defendant then picked up her daughter and brought her to the emergency room. While at the emergency room, Officer Heaney was informed by a nurse that the victim would be taken to Children's Hospital in Pittsburgh. The victim received over 150 stitches to her

face plus rabies shots from the attack.

Officer Heaney went to Cascade Park in an attempt to locate the dog involved in the attack. While there, he spoke with several people who all stated that they had not seen an animal running loose that fit the description of the dog. After searching Cascade Park, Officer Heaney spoke with the victim's father, George Murdock, who informed him of a previous incident involving E.M. and the dog, Max, owned by her mother's boyfriend, David Walters. Mr. Murdock stated that in December 2009, E.M. was treated for a dog bite to the face and neck where she received treatment at Jameson Hospital.

On September 16, 2010, Officer Heaney spoke with Animal Control Officer Wharry about this incident. Officer Wharry told him that on September 15, 2010, while he was in Cascade Park searching for the dog he was informed by a person in the park that the dog that bit E.M. was owned by the victim's family and that it did not happen in the park. Officer Wharry then contacted defendant to speak with her concerning the rumor that he heard and during their conversation defendant admitted that it was in fact Max, her boyfriend's dog, who bit her daughter and it happened at her boyfriend's residence and not at Cascade Park. She stated that she did not want her ex-husband or Officer Heaney to find out that she lied.

Officer Heaney went to defendant's residence to speak with her about what happened to her daughter. Defendant admitted that it was her boyfriend's dog and not a stray dog that had bitten her daughter and the same dog had bitten her daughter in the past. She admitted that her daughter was bitten while she was at her boyfriend's house and not in

Cascade Park. Additionally, defendant told officer Heaney that she is afraid of her boyfriend and that it was his idea to give the stray dog story at hospital. She stated that she was not truthful about how the dog bite occurred because she feared her kids would be taken away from her.

As a result, defendant was charged with endangering the welfare of children, in violation of 18 Pa.C.S.A. §4304(a)(1), and false swearing- mislead public servant, in violation of 18 Pa.C.S.A. §4903(a)(2). On December 20, 2010, the defendant filed this omnibus pretrial motion seeking dismissal of the charge of endangering the welfare of children.

Filing a petition for a writ of habeas corpus is the appropriate method by which a defendant may challenge a pre-trial finding that the Commonwealth has presented sufficient evidence to establish a prima facie case. *Commonwealth v. Karlson*, 674 A.2d 249 (Pa. Super. 1996); see also *Commonwealth v. McBride*, 528 Pa. 153, 595 A.2d 589 (1995); *Commonwealth v. Carmody*, 799 A.2d 143 (Pa. Super. 2002). In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *Comm v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999). The Commonwealth must satisfy this evidentiary burden by presenting evidence that established a crime was committed and that there is a probability that the defendant committed the crime. *Commonwealth v. Fox*, 619 A.2d 327 (Pa. Super. 1993). The Commonwealth establishes a prima facie case by offering some proof to establish each material element of the offense as charged. *Commonwealth v. Owen*, 580

A.2d 412 (Pa. Super. 1990). The Commonwealth is not required to prove this by the "beyond a reasonable doubt" standard; however, the Commonwealth must satisfy a standard of "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Prosdocimo*, 479 A.2d 1073 (Pa. Super. 1994).

The Commonwealth meets the burden of establishing a prima facie case when it submits evidence that, if accepted as true, would warrant a trial judge to allow the case to go to a jury. *Commonwealth v. Marti*, 779 A.2d 1177 (Pa. Super. 2001). Evidence must be presented concerning each element of the crime charged. *Id.* Such evidence must be viewed in the light most favorable to the Commonwealth. *Id.* Furthermore, the Commonwealth is entitled to all reasonable inferences that can be drawn from the evidence presented. *Id.* The weight or credibility of the evidence is not at issue during the preliminary hearing. *Id.*

The defendant contends that the Commonwealth has failed to establish a prima face case that defendant's conduct of lying to police about the details of the animal that bit her daughter and permitting her daughter to receive a series of rabies shots knowing the animal that bit her daughter was not a stray and was up to date with necessary shots and vaccines constituted a violation of 18 Pa.C.S.A. §4304, endangering the welfare of children.

18 Pa.C.S.A. §4304(a)(1) states, "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." In order to establish that the defendant

violated 18 Pa.C.S.A. §4304, the Commonwealth must prove the following elements:

1) the accused is aware of his or her duty to protect the child;

2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and

3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. *Commonwealth v. Wallace*, 817 A.2d 485, 490-491 (Pa. Super. 2002) (quoting *Commonwealth v. Pahel*, 689 A.2d 963, 964 (Pa. Super. 1997); *Commonwealth v. Cardwell*, 515 A.2d 311, 314 (Pa. Super. 1986)).

The law imposes an affirmative duty on parents to avert the untimely death or risk of bodily harm to their children. *Commonwealth v. Foster*, 764 A.2d 1076, 1082-1083 (Pa. Super. 2000) (citing *Commonwealth v. Nixon*, 718 A.2d 311 (Pa. Super. 1998)). Moreover, endangering the welfare of children is a specific intent crime that requires the defendant knowingly violates the duty of care, which can be violated through acts or omissions. *Commonwealth v. Cardwell*, supra, 515 A.2d at 313. This means that a parent's duty to protect his or her child requires affirmative performance to prevent harm and that failure to act may mean that the parent knowingly endangers the welfare of the child. *Id.*, 515 A.2d at 315. This does not mean that the child is actually harmed, but whether the defendant exposed the child to the risk of harm. *Commonwealth v. Winger*, 957 A.2d 325, 331 (Pa.Super. 2008) (citation

omitted). The Commonwealth may prove the elements of Endangering the welfare of children through circumstantial evidence. *Commonwealth v. Moore*, 395 A.2d 1328, 1332 (Pa. Super. 1978) (citations omitted).

In *Pahel*, supra., the appellant was convicted of endangering welfare of children regarding an incident in which she delayed obtaining medical treatment for her five-year-old son for several days, even though there were signs of significant facial injuries that included swelling on the nasal bridge and discoloration of the nose and eyes. The Commonwealth presented the testimony of the treating physician, who stated that the child's injuries required urgent medical attention at the emergency room or a doctor's office because the amount of trauma needed to inflict the nasal fracture could have caused an injury to the brain. The doctor also opined that the child's welfare was potentially endangered because of the facial injuries that could have let to serious medical problems. The jury found the appellant guilty and the appellant filed an appeal raising several issues, which included questioning the sufficiency of the Commonwealth's evidence regarding whether the appellant knowingly violated 18 Pa.C.S.A. §4304.

The *Pahel* court noted that the burden is on the Commonwealth to establish every element for the charge of endangering welfare of children in order to sustain the appellant's conviction. *Pahel*, 689 A.2d at 964 (citing *Commonwealth v. Miller*, 600 A.2d 988, 990 (Pa. Super. 1992)). The court stated:

Utilizing a common sense of the community approach to interpret the specific intent element of the statue, we

find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or of their failure to act. *Id.* 456 Pa.Super. at 163, 689 A.2d at 965 (Citing *Commonwealth v. Miller,* 411 Pa.Super. 33, 41, 600 A.2d 988, 991-992 (1992)).

The *Pahel* court also noted that the Commonwealth's expert testified that the treatment for the child would not have changed if the appellant sought medical attention for the victim when the injuries actually occurred. *Id.,* 689 A.2d at 966. Moreover, the doctor's report and the Children and Youth Services case worker who interviewed the appellant stated that the appellant was unaware of the injuries that occurred to her son and she did not know how the child hurt his nose. *Id.* The court concluded that it is impracticable to place the burden on every parent to seek medical attention for every childhood injury to dispel the mere potential threat to the child's welfare. *Id.,* 689 A.2d at 967. Additionally, the *Pahel* court explained, we must not rush to judgment any time and every time a minor suffers an injury that is not medically attended to immediately. Ideally, each and every injury of a minor-child should not go unattended, but the alacrity with which one acts to seek medical intervention, diagnosis or abatement of an injury is in the first instance for the parent to decide, allowing for review by the courts when a parent is found guilty of violating Section 4304. *Id.,* 689 A.2d at 966. Therefore, the *Pahel* court reversed the judgment of sentence and overturned the appellant's conviction for endangering

welfare of children. *Id.*

In the current case, the Commonwealth has based the charge of endangering welfare of children on the defendant's act of permitting her daughter to receive a series of rabies shots knowing the animal that bit her daughter was not a stray and was up to date with necessary shots and vaccines. Defendant does not dispute that, as a mother, she had a duty to protect her child. Rather, she argues that the evidence fails to establish: 1) that she knowingly placed the child in circumstances which could threaten the child's physical or psychological welfare; and 2) that her actions were so lacking that they could not be reasonably expected to protect the welfare of her child. Defendant contends that while she allowed her daughter to receive a series of rabies shots knowing that the dog that bit her was up to date with its shots, she did not knowingly place her daughter in a situation that would threaten the child's physical or psychological welfare. Moreover, defendant argues that allowing her daughter to receive unnecessary rabies shots did not endanger the welfare of her child. The record reflects that E.M. received a series of four shots for rabies and it was only after the first two in the series that defendant came forward and admitted that the dog that bit her daughter belonged to her boyfriend and was up to date on his shots. While the last two shots were administered with the knowledge that E.M. could not possibly have contracted the disease, defendant knowingly allowed her daughter to be given the first two shots in the series. Although defendant allowed her daughter to receive a series of shots to protect her against a disease she was aware her daughter could not have contracted from the dog bite, that act alone was not so

lacking as to threaten the child's physical or psychological welfare. This court notes that while the pain and discomfort associated with receiving rabies shots is not to be underestimated, it does not rise to the level of criminal culpability. Even though defendant was surely aware of the pain and discomfort associated with rabies shots, the act of allowing E.M. to receive the shots unnecessarily did not endanger the child's welfare.

In *Commonwealth v. Ogin*, 540 A.2d 549 (Pa. Super. 1998), the defendants/parents were convicted of, inter alia, endangering the welfare of their 17-month-old daughter by dragging and throwing the child against the wall of a building, twice striking the minor with a back-hand and pushing hot food in the child's face. On appeal, the defendants alleged that the evidence was insufficient to establish that they knowingly endangered the welfare of their child. The court found such argument to meritless. Under *Ogin*, to come within the scope of Section 4304, a parent may engage in extreme acts or grave omissions which adversely affect a child, or despite not sustaining serious injury, the parent knew that the conduct in question posed a threat to a child's welfare. See *Commonwealth v. Pahel*, supra., 456 Pa.Super. at 165, 689 A.2d at 966.

In the case before this court, although there is evidence that defendant allowed her daughter to receive a series of painful shots when she knew that they were not necessary, there is no evidence that that act was so extreme as to pose a threat to the child's welfare. While the court does not condone a parent allowing a child to undergo painful, unnecessary medical treatment, there is not enough evidence to charge endangering the welfare of a child based on causing a child to receive rabies shots alone.

There must be some additional evidence of an extreme act that threatens the child's physical and psychological welfare. Therefore, the Commonwealth has failed to present evidence that the defendant placed her daughter in a situation which could threaten her psychological or physical welfare. Thus, the charge of endangering welfare of children is dismissed.

For the reasons set forth in this opinion, the defendant's petition for writ of habeas corpus is granted and the charge of endangering the welfare of children is dismissed.

## ORDER OF COURT

And now, March 30, 2011, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that defendant's petition for writ of habeas corpus is granted as to the charge of endanger welfare of children as parent and such charge is dismissed.