J-S09006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAMIR N. W. SIMPKINS | : | |
| | : | |
| Appellant | : | No. 1104 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 2, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000556-2021

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED MAY 7, 2024**

Shamir N. W. Simpkins appeals from the judgment of sentence entered on March 2, 2023, for his convictions of third-degree murder and aggravated harassment by prisoner.[1] Simpkins challenges the sufficiency of the evidence for his conviction of third-degree murder. After careful review, we affirm.

On October 1, 2020, Simpkins was incarcerated at the Philadelphia Industrial Correctional Center ("PICC"). While housed in cell 7 of unit K, Simpkins shared his cell with one other person, the victim. Around 3:30 in the afternoon, Lieutenant Tracy Grant-Pratt opened the door to cell 7 to allow another inmate to exchange commissary items with Simpkins. Both Simpkins and the victim appeared normal at this time. At the end of the exchange,

---

[1] 18 Pa.C.S §§ 2502(c) and 2703.1, respectively.

Lieutenant Grant-Pratt closed and locked the door to cell 7 with only Simpkins and the victim inside. Approximately a half-hour later, around 4:00 PM, another inmate alerted Lieutenant Grant-Pratt to a possible situation in cell 7. Lieutenant Grant-Pratt proceeded to cell 7 and opened the door. Lieutenant Grant-Pratt observed the victim laying on the floor of the cell, bloody and unresponsive, with Simpkins standing over him. Lieutenant Grant-Pratt removed Simpkins from cell 7 and put him in cell 13. Simpkins had blood on his clothes and shoes, later confirmed to be the victim's blood through DNA testing. Lieutenant Grant-Pratt called for further assistance, and the victim was removed from cell 7. Simpkins was then taken to the medical unit for evaluation. He refused services and spit at the nurse attempting to evaluate him.

The victim was transported to the hospital, where he died two days later. The cause of death was blunt impact injuries to the head. The injuries the victim suffered included multiple abrasions, contusions, and lacerations to his face and head. He suffered multiple hemorrhages in his brain and neck. He had swelling of his brain and a torn corpus callosum, which connects the two hemispheres of the brain. He also suffered injuries to his torso and extremities, including contusions, abrasions, and hemorrhages. The forensic pathologist testified that there were "multiple points of impact … [with] injuries all over his head, both sides, front and back." N.T. Trial, 11/28/22, at 153.

Simpkins proceeded to a bench trial on November 28, 2022. The trial court found him guilty of third-degree murder and aggravated harassment by prisoner. The trial court sentenced Simpkins to 15 to 30 years' incarceration for third-degree murder and a concurrent 1 to 2 years' incarceration for aggravated harassment by prisoner on March 2, 2023. Simpkins timely appealed. The trial court ordered Simpkins to file a Rule 1925(b) statement, and he complied, filing it on May 18, 2023.

Simpkins raises one claim:

Did the [t]rial [c]ourt, also acting as the finder of fact, err as a matter of law in concluding that the evidence presented at trial was sufficient to prove all of the elements of the crime of [m]urder of the [t]hird [d]egree beyond a reasonable doubt?

Appellant's Brief, at 2.

Before we address the merits, we must first determine if the claim is waived, as alleged by the Commonwealth and trial court. **See** Appellee's Brief, at 6; Trial Court Opinion, 6/20/23, at 3. "It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citation omitted). "Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." **Id.**

If Appellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal.

Where a [Rule] 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal.

*Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (citations, brackets, and ellipsis omitted).

Simpkins' Rule 1925(b) statement does not specify which elements he believes were not proven at trial. *See* Rule 1925(b) Statement, 5/18/23 (unpaginated). Because of the lack of specificity in the 1925(b) statement, the trial court was unable to reasonably review his claim of insufficiency. As such, we find he has waived his claim.

Even if not waived, Simpkins would not be entitled to relief. Our scope and standard of review for sufficiency claims is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019) (citation omitted).

Simpkins challenges his conviction for third-degree murder, because, as he asserts in his brief, there was not sufficient evidence to find he acted with malice. **See** Appellant's Brief, at 2, 5. Third-degree murder is defined as "[a]ll other kinds of murder[.]" 18 Pa.C.S. § 2502(c). That is, murder that does not rise to the level of first- or second-degree murder. **See Commonwealth v. Windslowe**, 158 A.3d 698, 709 (Pa. Super. 2017). "It long has been clear that malice is an essential element of third-degree murder and is the distinguishing factor between murder and manslaughter." **Commonwealth v. Smouse**, 594 A.2d 666, 671 (Pa. Super. 1991) (citation omitted).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

**Windslowe**, 158 A.3d at 709 (citation omitted). "Among the circumstances that should be considered when determining the existence of malice in a case where fists are used to cause death are the size of the assailant, the ferocity of the attack, its duration, the provocation for it, and the manner in which the fists are used." **Smouse**, 594 A.2d at 671 (citations omitted).

Here, the Commonwealth did not have any direct evidence of how the victim received his injuries. The Commonwealth relied on circumstantial evidence, as Simpkins and the victim were the only two people in cell 7 at the time the victim was injured. Simpkins never gave a meaningful statement of

what occurred, and the victim was unable to tell anyone what happened to him. ***See*** N.T. Trial, 11/28/22, at 39-40, 59, 86. We do not know exactly how long the attack lasted (although we know it was within a half-hour or less), whether there was any provocation, or the manner in which Simpkins inflicted the fatal blows. What we do know is that the victim was found with Simpkins standing over him, covered in the victim's blood. ***See id.*** at 13, 15-16, 28, 99, 100-101, 166-167. The victim suffered numerous and significant injuries, ultimately causing his death. ***See id.*** at 125-129, 132. Simpkins suffered only a cut above his eye and an injury to his hand. ***See id.*** at 70, 111-112. Clearly, this attack was ferocious, based upon the significant injuries the victim suffered, which caused "injuries all over his head, both sides, front and back[,]" multiple hemorrhages, and a torn corpus callosum. ***Id.*** at 153; ***see id.*** at 125-129, 132. While circumstantial, the uncontradicted evidence was sufficient to find Simpkins acted with such cruelty and recklessness of consequences to find him guilty of third-degree murder. His argument to the contrary fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2024